UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| NORTHERN VIRGINIA FOOT & ANKLE ASSOCIATES, LLC *et al.*, | ) ) ) | |
| PLAINTIFFS | ) ) | |
| v. | ) ) | Civil Action No: 8:2010cv01640 |
| PENTAGON FEDERAL CREDIT UNION, *et al.*, | ) ) ) ) | Judge Roger W. Titus |
| DEFENDANTS. | ) ) | |

## <u>DEFENDANT PENTAGON FEDERAL CREDIT UNION'S MEMORANDUM OF LAW IN SUPPORT OF REMOVAL BASED ON DIVERSITY OF CITIZENSHIP</u>

Defendant Pentagon Federal Credit Union ("PFCU") submits this memorandum of law in support of its removal of this action to federal district court based upon diversity jurisdiction under 28 U.S.C. § 1332 (2010) because complete diversity of citizenship exists between Plaintiffs, citizens of the state of Maryland, and Defendants PFCU and Lydia McCaskill, both citizens of the Commonwealth of Virginia, and the amount in controversy is over $75,000. This Court has ordered further clarification from the parties as to the citizenship of PFCU, and PFCU presents this brief in support of its position that it is a citizen of Virginia, where its principal place of business or "nerve center" is located.

A unanimous United States Supreme Court in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010) resolved a patchwork of varying federal circuit court interpretations of "principal place of business" for purposes of corporations in federal court from removals based on diversity jurisdiction. In doing so, the Supreme Court instructed lower courts that "[s]imple jurisdictional rules also promote greater predictability, [which] is valuable to corporations making business and investment decisions." *Id.* at 1193. Moreover, "courts benefit from straightforward rules under which they can readily assure

themselves of their power to hear a case." *Id.* In *Hertz*, the Supreme Court directed lower courts to determine state citizenship based on a corporation's "principal place of business," which was defined as "the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *Id.* at 1192. This unanimous holding of the Supreme Court earlier this year provides the criteria for determining state citizenship of corporate entities for federal jurisdiction based upon diversity of citizenship.

Federal court decisions prior to *Hertz*, interpreting two federal statutes and a judge-made rule for federally chartered corporations, support the recognition of PFCU's citizenship in Virginia, its principal place of business, for purposes of diversity jurisdiction. While instructing courts to find simple jurisdictional rules, *Hertz* clarified the principal place of business test for corporations under 28 U.S.C. § 1332(c), as mentioned above. In another recent example of finding a simple jurisdictional rule, the Supreme Court in another unanimous decision (with one justice recused) interpreted the "location" under 28 U.S.C. § 1348 (2010) for a federally chartered bank and held that the bank was located in the state listed in the articles of incorporation, rather than every state in which the bank had a branch office. *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).

Finally, the precedents regarding federally chartered corporations demonstrate that jurisdiction is both statutorily derived as well as created by federal courts defining the scope of their jurisdiction. The localization doctrine created by some federal courts more than fifty years ago points to an analysis based on the legal fiction of "citizenship" in the state in which a federally chartered corporation is "localized," *i.e.*, puts its corporate feet on the ground. The rationale for federal diversity jurisdiction applies equally to federally chartered corporations, who may suffer bias in any one of the fifty states, the District of Columbia, and United States territories by local courts in favor of local parties. Indeed, it would be

incongruous for a *federally chartered* corporation to be afforded fewer rights than its state counterparts and foreign corporations, in terms of having access to *federal* court under diversity jurisdiction.

When analyzed comprehensively, the federal court precedents point to a conclusion that the state of PFCU's principal place of business should be acknowledged under the "nerve center" directive issued by the Supreme Court in *Hertz*. This would update the localization doctrine, created by courts prior to the amendment of 28 U.S.C. § 1332, which defined citizenship for a corporation and included a "principal place of business" formulation for citizenship. Consistent with the recent Supreme Court doctrine of "location" for national banks, PFCU is not a citizen of each state where it has credit union branches but rather is a citizen exclusively at the situs of its corporate headquarters in Virginia, where PFCU has its nerve center. This is a plain, straightforward jurisdictional test of elegant simplicity. It comports with the Supreme Court's recent *Hertz* decision adopting the "nerve center" test for corporate citizenship as well as an updated doctrine of localization for federal credit unions in time of modern global commerce. Thus, this Court should recognize its subject matter jurisdiction over this case pursuant to federal diversity jurisdiction based on the complete diversity of citizenship of Plaintiffs and Defendants. PFCU requests a hearing on these issues, in accordance with this Court's Local Administrative Rule 105(6).

**I.     BACKGROUND**

    **A.     Case Background**

Plaintiffs filed their complaint in Maryland state court on June 15, 2010, and three days later, Defendant PFCU removed the case to this Court based upon diversity jurisdiction under 28 U.S.C. § 1332. *See* Notice of Removal (Dkt. 1); Compl. (Dkt. 2). In its removal papers, PFCU stated that its principal place of business was in Virginia, rendering it a citizen of Virginia. Notice of Removal at ¶ 20.

Defendant Lydia McCaskill is a resident-citizen of Virginia. *Id.* at 21. Plaintiffs Drs. Michael Klein and Francis Smith are resident-citizens of Maryland, and the Plaintiff limited liability company, Northern Virginia Foot & Ankle Associates, LLC, is also a resident of Maryland because LLCs are citizens of the state in which its members are citizens. *Id.* at ¶¶ 16-18. Moreover, Plaintiffs alleged that more than $400,000 is in controversy. *Id.* at ¶ 14. Thus, there is complete diversity between plaintiffs and defendants

Plaintiffs did not file a motion to remand under 28 U.S.C. § 1447(c) (2010). At the October 18, 2010 hearing for PFCU's Motion to Dismiss Amended Complaint (Dkt. 22), this Court *sua sponte* raised the issue of its subject matter jurisdiction over the case and specifically whether diversity jurisdiction existed when PFCU is a federally chartered credit union and is not incorporated in the Commonwealth of Virginia, where PFCU is headquartered and has its principal place of business. The Court directed the parties to submit briefs on federal subject matter jurisdiction predicated upon diversity of citizenship of the parties. Order (Oct. 19, 2010) (Dkt. 31).

### B. PFCU background

PFCU is a federally chartered corporate credit union under the Federal Credit Union Act, found at 12 U.S.C. §§ 1751-1795k (2010). Notice of Removal ¶ 19. Federal credit unions are "nonprofit, cooperative financial institution[s] owned and run by [their] members." National Credit Union Administration, Frequently Asked Questions, *available at* http://www.ncua.gov/About/FAQ.aspx. These corporations are "democratically controlled" and allow "[m]embers [to] pool their funds to make loans to one another." *Id.* A volunteer board, elected by members, directs the strategy of the credit union. *Id.* Federal credit unions have a defined field of membership. *See* 12 U.S.C. § 1753(5).

PFCU was first chartered and established in 1935 under the Federal Credit Union Act of 1934 as the "War Department Federal Credit Union." 1935 Charter (Ex. 1). The United States War Department, the cabinet position for the United States Army, was a predecessor of the United States Department of Defense. The charter established the credit union under the Federal Credit Union Act as a federal corporation, with by-laws, shareholders, directors, officers, and board of directors. 1935 Charter, Organization Certificate; 12 U.S.C. §§ 1751 – 1795k. *See, e.g.,* 12 U.S.C. § 1757 (enumerating powers of credit union as federal corporation). The charter stated that the proposed credit union will maintain its office at the Munitions Building in Washington, D.C. and will operate in the District of Columbia. *Id.* at (2). The Munitions Building was the precursor to the Pentagon, which was built in 1943. The proposed field of membership includes "[e]mployees of the War Department in Washington, D.C. (exclusive of the Adjutant General's office); members of their immediate families; and any association of such employees." *Id.* at (5). When the credit union amended its charter in 1947, it took the name of the new building housing members of the War Department as well as other armed forces: Pentagon Federal Credit Union ("PFCU"). 1947 Amendment to 1935 Charter (Ex. 2).

Since that time, PFCU has accommodated its members' deployment schedules and family lives, by establishing branches at or near U.S. Armed Forces bases throughout the country and overseas, for example, Fort Hood in Killeen, TX; Pope Air Force Base in Fayetteville, NC; and the Coast Guard Training Base at Cape May, NJ. Thus, in this manner, PFCU takes care of its members, much the way national banks provide services to their regional customers who become global travelers.

II. **THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE DIVERSITY OF CITIZENSHIP EXISTS BETWEEN PLAINTIFFS AND DEFENDANT.**

As PFCU contended at the hearing on October 18, 2010, there is at present no mandatory precedent in this Court or the Fourth Circuit concerning the determination of citizenship for a federally

5

chartered credit union for diversity jurisdiction under 28 U.S.C. § 1332 or under a judge-made rule. Thus, in light of the Supreme Court's recent instructions in *Hertz* that "[s]imple jurisdictional rules . . . promote great predictability" and "courts [and parties] benefit from straightforward rules," this Court should recognize and apply the analysis for state-chartered corporations under 28 U.S.C. § 1332(c) to federally chartered credit unions. Federal appellate court precedents reveal that there is a pendulum swinging toward simple criteria for determining citizenship for diversity jurisdiction. Not only does the Supreme Court expect more reasonable, pragmatic approaches of evaluating jurisdiction, but it has also repeatedly, and recently under *Hertz*, provided a simpler approach to recognizing the citizenship of federally chartered corporations for purposes of diversity jurisdiction, *i.e.,* "nerve center" test.

Moreover, there is an analogue to the principal place of business test under 28 U.S.C. § 1332(c). Using the recent Supreme Court interpretation of 28 U.S.C. § 1348 to find that national banks are "located" in the state listed in the articles of incorporation and building from past precedents allowing state citizenship for "localized," federally chartered corporations, this Court should recognize an analysis for diversity jurisdiction that relies on the principal place of business – the "nerve center" in *Hertz* parlance – for a federally chartered credit union. This approach recognizes that PFCU is a citizen of Virginia by virtue of having its principal place of business and "nerve center" in Alexandria, Virginia, thereby establishing diversity between it and the Plaintiffs in this case, citizens of Maryland.

> **A. The History of Federally Chartered Corporations is Long and Checkered, But Provides No Precedent Forbidding the Establishment of State Citizenship for Diversity Jurisdiction Purposes for a Federally Chartered Credit Union at Its Principal Place of Business.**

The Eastern District of Virginia federal district court accurately recognized that "[t]he proper citizenship of federally chartered corporations has a long and checkered legal history." *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortgage*, 415 F. Supp. 2d 636, 639 (E.D. Va. 2006). Congress allowed

federal charters for corporations in the 19th century, and the Supreme Court allowed these corporations unlimited access to federal courts by virtue of the federal question posed by their federal charter, a situation codified by Congress in 1875 with the introduction of federal question jurisdiction. *See Osborn v. Bank of United States,* 22 U.S. 738 (1824); 28 U.S.C. § 1331 (enacted on March 3, 1875 and now codified at § 1331). When the caseload proved to be too great for the courts to handle, Congress eliminated the blanket grant of jurisdiction in 1925 for federally chartered corporations, except for corporations in which the United State government owns a majority of the corporation's capital stock. *See* 28 U.S.C. § 1349 (enacted on Feb. 13, 1925 and now codified at § 1349). In the meantime, the Courts continued to chip away at federal jurisdiction for federally chartered corporations. *See Bankers' Trust Co. v. Texas & P.R. Co.*, 241 U.S. 295 (1916) (federally chartered railroad).

Then, as this restrictive system grew unworkable for other federally chartered corporations and potentially recognizing the paradox that *federally* chartered corporations have difficulty getting into *federal* courts, Congress and some federal courts gradually added back avenues for federal court jurisdiction, whether under diversity of citizenship or federal question jurisdiction. *See, e.g.,* 28 U.S.C. § 1348 (deeming national banking associations to be "citizens of the States in which they are respectively located" for purposes of diversity jurisdiction); *Elwert v. Pac. First Fed. Sav. & Loan Ass'n of Tacoma, Wash.*, 138 F. Supp. 395 (D. Ore. 1956) (holding that federally chartered bank was sufficiently "localized" in one state, in which it had its principal place of business, for purposes of diversity jurisdiction, despite having a branch in a different state); *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453 (3d Cir. 1959) (holding federally chartered credit union had state citizenship for purposes of diversity jurisdiction because activities were sufficiently localized in one state); *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia*, 657 F.2d 29, 31 (D.N.J.

1981) (deeming federal savings and loan association a citizen of Pennsylvania by citing principle found in *Feuchtwanger* that federally chartered corporation has citizenship of state "where based"); *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247 (1992) (holding that because federally chartered corporation had capacity "to sue or be sued in courts of law and equity, State or Federal" in its founding statute, then it had express authorization to sue and be sued in federal courts via federal question jurisdiction); *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603 (11th Cir. 1995) (finding federally chartered corporation to be sufficiently "localized" and thus considered citizen of one state for diversity, despite corporate activities in different states); *Wachovia v. Schmidt*, 546 U.S. 303 (2006) (rejecting interpretation of 28 U.S.C. § 1348 as creating citizenship for federally chartered national bank in every state with a bank branch and holding that national banks are "located" for statute purposes only in the state listed in the national bank's articles of incorporation); 12 U.S.C. § 1464(x) (federal savings association is considered to be citizen of state in which association has home office) (superseding holding of *Lehman Brothers*, 415 F. Supp. 2d 636); *Hertz*, 130 S. Ct. 1181 (rejecting tortured jurisdictional rules concerning principal place of business).

In fact, in 1959, the *Feuchtwanger* Court noted that the "present direction of public policy is toward greater recognition of local corporate activity as equivalent to citizenship for diversity purposes" and that the legislative amendment to 28 U.S.C. § 1332 in 1958 to add "principal place of business" to establish corporate citizenship also evidenced a recognition of corporate substance over formality. *Id.*, 272 F.2d at 456. The *Feuchtwanger* court, in referencing the § 1332 amendment, even allowed for an expansion of the "localization" doctrine for a federally chartered corporation: "[F]or the future, localizations less extreme than we have in this case will suffice to establish corporate citizenship in the administration of diversity jurisdiction." *Id.* Likewise, the *Hertz* Court, in creating an easy-to-use

8

interpretation of principal place of business, gave priority to "[s]imple jurisdictional rules" to provide courts and parties with predictability to allow them to reach the merits of cases, rather than enforcing "[c]omplex jurisdictional tests [that] complicate a case, eating up time and money as the parties litigate" the proper court. 130 S. Ct. at 1193.

Thus, while a decision of the Eastern District of Virginia – prior to *Hertz* – declared that "statutory and common law history over the past ninety years clearly evinces a general trend to limit federal jurisdiction over claims involving federally chartered corporations," the actual history is hardly clear. The history of determining federal jurisdiction over federally chartered corporations, if anything, shows an opposite trend in the federal appellate courts. *Compare Lehman Bros. Bank, FSB v. Frank T. Yoder Mortgage*, 415 F. Supp. 2d 636 (E.D. Va. 2006) *with Feuchtwanger*, 272 F.2d at 456. After Congress eliminated the easy and overbroad route into federal courts – via automatic federal question jurisdiction for federally chartered corporations – Congress and the courts acted in various practical fashions to allow federally chartered corporations to gain access to federal courts, like other state-chartered corporations. In this manner, state-chartered corporations and federally chartered corporations have been placed on the same footing for litigation, with more predictable results for businesses. These efforts to focus the legal fiction of a corporation's state "citizenship" for diversity jurisdiction have received stamps of approval from a unanimous Supreme Court in *Hertz* and an 8-0 Court in *Wachovia*, which demonstrates the Court's emphasis on "simple jurisdictional rules."

### B. This Court Should Adopt an Updated Doctrine of "Localization" That Reflects a Federal Credit Union's Principal Place of Business.

In recognition of the modern commercial practice that allows businesses to cross borders as easily as crossing the street, and the Supreme Court's instruction to find "simple jurisdictional rules," PFCU should be acknowledged for federal diversity jurisdiction as a citizen of the Commonwealth of

Virginia, which is the state of its principal place of business and exclusive situs of its "nerve center" for directing, controlling, and coordinating its activities nationwide and internationally. There is no statute or binding precedent upon this Court either foreclosing or expressly providing federal credit unions with state "citizenship" for diversity jurisdiction. However, the Supreme Court in *Hertz* has now explicitly endorsed the "nerve center" test as the site of a corporation's principal place of business in its judicial analysis of § 1332. Likewise, the judicial holding of the Supreme Court concerning 28 U.S.C. §1348 in *Wachovia* rejected the approach that would otherwise find national banks to be citizens of each state that has a branch of the bank. These decisions, along with the previous judge-derived rule that federally chartered corporations can be localized in one state, support a simple judge-made rule here that grounds the citizenship of a federal credit union in the state of its principal place of business and "nerve center." Indeed, this is an update of the localization rule discussed in *Feuchtwanger*, which was issued without an analysis of the impact of the amendment to § 1332 that defines citizenship of corporations by their principal place of business, that reflects recent jurisprudence and modern business practice.

### 1. Statutory grants of jurisdiction are preferred but not mandatory.

Creating a rule for the state citizenship of federal credit unions here comports with previous efforts by judges to find "simple jurisdictional rules" so as to prevent the imbalanced reality that federally chartered corporations would be inexplicably barred from federal court under diversity jurisdiction when similarly-situated state-chartered corporations are granted access. Federal courts generally look to statutes to find subject matter jurisdiction, but have regularly found jurisdiction through "judge-made" rules. *See Feuchtwanger*, 272 F.2d at 455 (discussing "[t]he judge-made rule which for diversity purposes attributes to a corporation citizenship in the state of its incorporation").

In a famous example for diversity jurisdiction, judges first created the legal fiction that a corporation is a "citizen" of the state in which it is incorporated. *See Hertz*, 130 S. Ct. at 1187-90 (discussing history of diversity jurisdiction involving corporations). This interpretation lasted over a hundred years until it was codified into § 1332(c) with the additional requirement that a corporation would also be a citizen in the state of its principal place of business. In another example of finding diversity jurisdiction absent a statutory grant, judges created the "localization" rule for federally chartered corporations, given a credit union's presence in one state. *See Feuchtwanger*. Here, there is no specific statute at issue granting citizenship specifically to a federal credit union for purposes of jurisdiction. However, precedent from appellate courts demonstrates that this Court can and should recognize PFCU as a citizen of its principal place of business, Virginia, for diversity jurisdiction purposes.

        2.    **"Localization" was an early attempt at a judge-made rule to ascribe state citizenship of a federally created entity and should be updated to reflect current business practices.**

*Feuchtwanger*'s principle of "localization," in fact, is a "judge-made" rule that was an attempt to ascribe state citizenship to a federal credit union in the state that was home to the business. This Court should recognize this "judge-made" rule, but update it to reflect the modern business environment, in which the technology and internet access would change the character of most businesses and likely prevent them from being truly "localized" in any one state.

Resolving a dispute that arose prior to the amendment of § 1332 that provided two routes for state corporations to achieve "citizenship" for diversity jurisdiction, the *Feuchtwanger* court used the principle of "localization" to approximate a connection between a corporation and the state that chartered it – the basis for diversity jurisdiction. To the *Feuchtwanger* court, it was significant that the

credit union and its members were all based, or "localized" in one state. *Id.*, 272 F.2d at 454-55. At the time of the decision, the court recognized the new legislative amendment to § 1332, but based its "localization" doctrine upon a corollary to the other judge-made rule that a state-chartered corporation was a citizen of the state of incorporation. *Id.* at 455. The most commonly used rationale for diversity jurisdiction – to avoid local bias in favor of local persons – was certainly present in a corporation located in just one state. *Id.* Demonstrating the court's reluctance to create a closed doctrine of "localization," the *Feuchtwanger* court recognized that "the present direction of public policy is toward greater recognition of local corporate activity as equivalent to citizenship for diversity purpose[s]" and allowed that "for the future, localizations less extreme than we have in this case will suffice to establish corporate citizenship in the administration of diversity jurisdiction." *Id.* at 456.

Building upon that analysis, the Eleventh Circuit found that a federally chartered savings bank was sufficiently localized in one state, despite corporate activities in other states, such that the federal corporation established state citizenship to preserve diversity jurisdiction. *Loyola Federal Savings Bank v. Fickling*, 58 F.3d 603 (11th Cir. 1995). Again, demonstrating reluctance to adhere to a strict principle in which the corporation can have no activities outside the state, the Eleventh Circuit explained that "[t]he [corporate] activities do not have to be 100% localized" and cited *Feuchtwanger* for support. *Id.* at 606. *See also Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 624 F. Supp. 858 (E.D. Pa. 1985) (finding defendant federal corporation to be a citizen of California when "defendant had 138, or 71% of its branch offices in California and had a substantial amount of its deposits and outstanding loans in California"). The Eleventh Circuit proposed its own test for localization, which looked to "a variety of factors" including "the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data

12

providing evidence that the corporation is local in nature." *Id.* Again, the *Fickling* court explained that the "more expansive approach comports with diversity jurisdiction's purpose of avoiding any possible bias favoring the party from the state in which the state court proceedings is brought." *Id.*

Under the Supreme Court's instruction to federal courts in *Hertz* to find "simple jurisdictional rules," the Eleventh Circuit's test for "localization" of a federal corporation is overly complicated, especially when compared with the "principal place of business" instruction – *i.e.*, the "nerve center" test – just recently provided by a unanimous Supreme Court. As the *Hertz* court recognized, "[c]omplex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims." *Id.*, 130 S. Ct. at 1193.

This Court should avoid a more complicated rule in favor of a principal place of business or "nerve center" test for several reasons. First, given that the Eleventh Circuit's test already included the principal place of business as a factor showing corporate activities, this Court should eliminate the remaining overly complicated factors and simply look to the principal place of business as the proper application of localization. This approach would be wholly in accord with the jurisdictional principle that the Supreme Court just enunciated earlier this year. *See Hertz*, 130 S. Ct. at 1192 (rejecting Eleventh Circuit's principal place of business test under § 1332 that includes review as to whether "a corporation's activities are centralized or decentralized" and then analyzed under a "place of operations" or "nerve center" test). Second, defining "localization" for a federal credit union would be problematic under a narrow localization test established more than fifty years ago, half a century prior to *Hertz*. Mortgages for Virginia residents could be for a second home from a previous deployment, credit cards could have been originally opened by Virginia residents who then move across the country or around the world, savings and checking accounts could be for members of the United States armed forces originally

13

based in Virginia who move from base to base, and – importantly – technology permits members to easily, quickly, and efficiently interact with federal credit unions from their computer or telephone, as do customers and members of other financial institutions everywhere.

Third, the eight participating Justices of the Supreme Court have now disapproved of an interpretation of national banks that made them citizens of every state in which the bank had a branch; instead, national banks are deemed to be "located" within the meaning of 28 U.S.C. § 1348 only in the state listed in the articles of incorporation. *See Wachovia*, 546 U.S. 303.[1] The Court declared that "[f]or purposes of diversity, a corporation surely is not deemed a citizen of every State in which it maintains a business establishment." *Id.* at 317. The Court thereby rejected the Fourth Circuit's attempt to "severely constrict[] national banks' access to diversity jurisdiction as compared to the access available to corporations generally." *Id.* (noting that under Fourth Circuit's interpretation, national bank in case would be citizen of 16 states, an "anomalous result").

        3.     **Rationale for diversity jurisdiction lies equally with federally chartered credit union with its headquarters and nerve center in one state.**

The traditional rationales for supporting diversity jurisdiction for corporations apply equally to PFCU here. The most common rationale is that federal court helps to insulate parties foreign to the forum state from local bias in favor of the local party. *See, e.g., Feuchtwanger*, 272 F.2d at 455 (noting that "a principal justification for diversity jurisdiction" is "local bias in favor of local persons and institutions in controversies with strangers"). This reasoning applies in the case of PFCU. PFCU's headquarters is in Virginia, where the nerve center of its operations is centered. PFCU's one branch in

---

[1] PFCU, of course, is not arguing here that it would not necessarily in a particular case be subject to venue or personal jurisdiction in locations in which it had a branch. *See Wachovia*, 546 U.S. at 316 ("This basic difference between the court's power and the litigant's convenience is historic for federal courts.") (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939)).

Maryland with its five employees does not make it a local citizen insulated from any potential local bias on behalf of the plaintiffs, who reside in Maryland.

Moreover, there would be no justification under *Hertz* or *Wachovia* to put PFCU at a commercial disadvantage, for example, as compared with state-chartered credit unions or foreign corporations. The putative result that a federally chartered corporation is for legal purposes a stateless entity would be unnecessary under current Supreme Court precedents and contravenes the approach endorsed by the Supreme Court to find a simple jurisdictional rule to determine citizenship of corporations for diversity jurisdiction. To recognize diminished rights in a federal credit union as an ephemeral citizen of nowhere – a stateless entity – would afford federal credit unions even more restricted access than a foreign corporation has to a federal court. It would ostensibly make *federal* courts unavailable to any *federally* chartered corporations, including all federal credit unions, in every case predicated upon diversity jurisdiction. This would include cases such as this one, involving a state's commercial code, which replicates a substantial portion of the Uniform Commercial Code. The legal fiction of a corporation being grounded in no state whatsoever due to its status as a federally chartered corporation, however, is contradicted by the factual reality of PFCU's long-standing corporate headquarters in Virginia, close to its namesake – the Pentagon building – and close to its membership base in the armed forces.

As the Supreme Court emphasized in *Hertz*, resolving the question of PFCU's citizenship for diversity jurisdiction promotes predictability and efficiency in business practices and federal litigation, permitting PFCU as a federal credit union to plan its business strategies, which include anticipation of potential litigation. PFCU is a not-for-profit credit union, which plows all monies back into the products and services provided to its members. Thus, inefficiencies and unpredictability result in the waste of member resources and deprive the credit union of providing the best rates to its members. Being in

15

federal court with standard federal rules of civil procedure and evidence that apply across the country assists PFCU and any federal credit union in managing its commercial activities. Furthermore, in cases such as the one before this Court, which involves the application of the Uniform Commercial Code, PFCU contributes to standardization of the law for these types of uniform codes that are adopted in whole by states, such as Virginia and Maryland, who also look in part to federal courts for their interpretations.

Finally, in a rationale particular to PFCU, the credit union benefits from being in federal court by virtue of the population it serves. PFCU's membership field includes active members of the United States armed forces and their families, as well as affiliated persons. When PFCU is involved in litigation on behalf of its members, PFCU may suffer unpredictable local bias in state courts, which may not necessarily recognize the needs, interests, and services provided on a commercial basis to the armed forces community of the United States. This was the very purpose for which PFCU was chartered and established under federal statute to serve this unique community.

**C.    This Court Has Subject Matter Jurisdiction under 28 U.S.C. § 1332.**

By applying the Supreme Court's "nerve center" test articulated in *Hertz* as informed by the interpretation of "location" in 28 U.S.C. § 1348 and the judge-made rule of "localization" discussed earlier, there is complete diversity between Plaintiffs and Defendants here. Moreover, the amount in controversy exceeds $75,000. Thus, this Court has subject matter jurisdiction under 28 U.S.C. §1332 based on diversity jurisdiction.

Both Defendants are citizens of the Commonwealth of Virginia. Defendant McCaskill, as a resident of Virginia, is a citizen of Virginia. Am. Compl. ¶ 6. PFCU is a citizen of the Commonwealth of Virginia, where its headquarters – its principal place of business, *i.e.*, "nerve center" – manages the

overall operations of the credit union. *See* Aff. of Roderick B. Mitchell (Ex. 3). Virginia is the location of PFCU's executive team and most of its management team. *Id.* at ¶¶ 11-13. It is also the location of the meetings of the board of directors and the member-shareholders. *Id.* at ¶¶ 16-19. The annual reports are prepared in and distributed from Virginia. *Id.* at ¶ 20. Each member's agreement with PFCU contains the agreement that Virginia law will apply to govern disputes. *Id.* at ¶ 21. The data center is located in Virginia, and PFCU prepares and distributes members' account statements from Virginia. *Id.* at ¶¶ 22-23. Branches and back offices receive direction from PFCU headquarters, which controls and coordinates the activities of credit union as a whole. *Id.* at ¶ 28. Thus, based on a test elucidated above that finds a federally chartered credit union to be a citizen of the state of its principal place of business or "nerve center," PFCU is a citizen of Virginia.

Plaintiffs – Dr. Michael Klein, Dr. Francis Smith, and Northern Virginia Foot & Ankle Associates, LLC – are citizens of Maryland. Drs. Klein and Smith admit to being residents of Maryland. Am. Compl. ¶ 2-3. Northern Virginia Foot & Ankle is a limited liability company, with its principal place of business in Maryland. Am. Compl. ¶ 1. Under Supreme Court precedent, the citizenship of a limited liability company is determined by the citizenship of its members: here, those members are Drs. Klein and Smith. Am. Compl. ¶ 1-3; *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96 (1990).

Furthermore, Plaintiffs have alleged over $400,000 in damages, which satisfies the amount in controversy requirement found in 28 U.S.C. § 1332(a).

Thus, complete diversity exists between Plaintiffs and Defendants, and this Court has subject matter jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332.

### III. CONCLUSION

For these reasons, this Court should recognize that it has subject matter jurisdiction over this case based on diversity jurisdiction under 28 U.S.C. § 1332.

Dated: November 1, 2010                                       Respectfully submitted,
*Of Counsel:*
William J. Cople, III, Esq.                                   ___/s/ Jared S. Wiesner_____
Jennifer H. Gans, Esq.                                        Jared S. Wiesner, Esq. (USDC of MD #17217)
  HOLLINGSWORTH LLP                                               HOLLINGSWORTH LLP
  1350 I Street, N.W.                                             1350 I Street, N.W.
  Washington, DC  20005                                           Washington, DC  20005
  Phone: (202) 898-5800                                           Phone: (202) 898-5800
  Fax: (202) 682-1639                                             Fax: (202) 682-1639

*Attorneys for Defendant Pentagon Federal*                    *Attorneys for Defendant Pentagon Federal*
*Credit Union*                                                *Credit Union*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 1, 2010, a true and correct copy of the foregoing was served in the manner indicated below:

| | |
|---|---|
| Gregory S. Winton, Esq.<br>Aviation Law Experts, LLC<br>One Research Court, Suite 450<br>Rockville, MD 20850<br>Counsel for Plaintiffs | Lydia D. McCaskill<br>10206 Chase Commons Dr. #105<br>Burke, VA 22015<br>Defendant |
| *via CM/ECF electronic notice and first-class mail* | *via first-class mail* |

                                                                       ___/s/ Jared S. Wiesner_____
Jared S. Wiesner, Esq.
USDC of MD #17217
  HOLLINGSWORTH LLP
  1350 I Street, N.W.
  Washington, DC  20005
  Phone: (202) 898-5800
  Fax: (202) 682-1639

*Of Counsel:*
William J. Cople III, Esq.
Jennifer H. Gans, Esq.
  HOLLINGSWORTH LLP
  1350 I Street, N.W.
  Washington, DC  20005
  Phone: (202) 898-5800
  Fax: (202) 682-1639

*Attorneys for Defendant Pentagon Federal Credit Union*