**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **NORTHERN VIRGINIA FOOT &** | * | |
| **ANKLE ASSOCIATES, LLC**, *et al.*, | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No.: RWT 10cv1640 |
| | * | |
| **PENTAGON FEDERAL CREDIT** | * | |
| **UNION**, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM OPINION

"The proper citizenship of federally chartered corporations has a long and checkered legal history."

—*Lehman Bros. Bank, FSB v. Frank T. Yoder Mortgage*, 415 F. Supp. 2d 636, 639 (E.D.Va. 2006).

Plaintiffs Northern Virginia Foot & Ankle Associates, LLC ("Northern Virginia"), a limited liability company offering podiatry services, and its two members initiated this action in the Circuit Court for Montgomery County. ECF No. 2. Defendant Pentagon Federal Credit Union ("PenFed"), a federally-chartered credit union, removed this action to this Court on the basis of diversity of citizenship. ECF No. 1. Having concluded that this Court lacks subject matter jurisdiction, this action shall be remanded to the Circuit Court for Montgomery County.

## BACKGROUND

PenFed was originally chartered in 1935 under the Federal Credit Union Act of 1934, 12 U.S.C. § 1751, *et seq.*, as the War Department Federal Credit Union. PenFed's Memorandum in

Support of Removal, Ex. 1. ECF No. 33. The War Department Federal Credit Union's Organization Certificate limited membership in the credit union to those who were employees of the War Department in Washington, D.C.; members of their immediate families; and any association of such employees. *Id.* ECF No. 33-1 at 5. The Organization Certificate was amended in 1947 and the War Department Federal Credit Union was renamed Pentagon Federal Credit Union. *Id.* Ex. 2. The field of membership was also expanded to include civilian and military employees of the Departments of the Army and Air Force working in the District of Columbia, Arlington and Fairfax Counties, Virginia, and the City of Alexandria, except those employees stationed at Gravelly Point, Fort Myer and Fort Belvoir; employees of the credit union; members of their immediate families and organizations of such persons. *Id.*

PenFed is headquartered in Alexandria, Virginia. *Id.*, Ex. 3 (Mitchell Aff.), at 1. PenFed's executive officers are based in Alexandria, Virginia, and the majority of its management team works out of the Alexandria office. *Id.* PenFed has member service centers in Eugene, Oregon and Omaha, Nebraska, and has branch locations worldwide. *Id.* at 2. PenFed has four branch locations in Virginia; seven branch locations in Washington, D.C.; one branch in Maryland; one in New Jersey; two in North Carolina; one in Hawaii; two in Texas; two in New York; one in Puerto Rico; one in Guam; one in Turkey; one in Portugal; and one in Japan. *Id.*

## PROCEDURAL HISTORY

Northern Virginia and its two members filed a five-count complaint in the Circuit Court for Montgomery County on June 15, 2010. ECF No. 2. On June 18, 2010, PenFed removed the action to this Court based upon diversity jurisdiction. ECF No. 1. In its removal papers, PenFed asserted that it is a citizen of Virginia, because its principal place of business is in Virginia. Notice of Removal at ¶ 6, ECF No. 10. PenFed moved to dismiss the Complaint on July 6, 2010.

ECF No. 11. Plaintiffs filed a First Amended Complaint on July 15, 2010, which PenFed moved to dismiss on July 29, 2010. ECF Nos. 18, 22.

A hearing was held on October 18, 2010 on PenFed's motion to dismiss, at which time the Court raised the issue of whether the Court has subject matter jurisdiction *sua sponte*. Specifically, the Court questioned whether a federally-chartered credit union not incorporated in any state can claim state citizenship for diversity purposes.

PenFed requested the opportunity to file a supplemental memorandum of law in support of its position that this Court has subject matter jurisdiction over this action. The Court granted this request and the issue was fully briefed. The Court held a hearing on January 10, 2011 on the subject matter jurisdiction question.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1441, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- citizens of different States . . . ." 28 U.S.C. § 1332(a). This Court must remand a case that has been removed from state court "[i]f at any time before final judgment it appears that [this Court] lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction," resolving any doubts in favor of remand. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

## ANALYSIS

Congress first authorized federal courts to exercise diversity jurisdiction in 1789 when the federal courts were granted the authority to hear suits "between a citizen of the State where the suit is brought, and a citizen of another State." § 11, 1 Stat. 78. A corporation was not deemed entitled to claim state citizenship under this statute until 1844, when the Supreme Court "held that a corporation was to be deemed an artificial person of the State by which it had been created, and its citizenship for jurisdictional purposes determined accordingly." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1188 (2010) (*citing Louisville, C. & C.R. Co. v. Letson*, 11 L. Ed. 353 (1844)). In 1958, in response to the ballooning dockets of the federal courts, Congress modified how the citizenship of a state-chartered corporation was determined, and since then a state-chartered corporation has been "deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Id.* at 1190. The addition of the "principal place of business" language was intended to contract, not expand, federal jurisdiction. The premise of the language is that a state-chartered corporation is a citizen of the state of its incorporation (where it may have no real presence) *and* of the state of its principal place of business, which may be the same or a different state. This test, codified at 28 U.S.C. § 1332(c)(1), has never been held to allow federally-chartered corporations to invoke diversity jurisdiction.

The history of the federal courts' jurisdiction to hear cases in which a federally-chartered corporation is a party has followed a very different trajectory. Prior to the 1880's, any action involving a federally-chartered corporation was deemed to present a federal question based solely on the fact that the corporation had been chartered under the laws of the United States. *See Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F. 2d 453, 455 (3d Cir.

4

1959). At that time, a federally-chartered corporation was also "regarded as a citizen of the place where it did business for purposes of diversity jurisdiction." *Id.* Due to concerns with the rapidly growing jurisdiction of the federal courts, Congress enacted legislation in 1887 that eliminated federal question jurisdiction based solely on a business's federal incorporation. 24 Stat. 552 (1887). At that time, federally-chartered corporations could still invoke federal subject matter jurisdiction on the basis of the state of their location. *Feuchtwanger*, 272 F. 2d at 455.

However, in *Bankers' Trust Co. v. Texas & Pacific Railway Co.*, 241 U.S. 295, 309-10 (1916), the Supreme Court held that a federally-chartered railroad was not a citizen of any state for diversity purposes. The Supreme Court noted that the railroad's activities and operations were not confined to a single state but, rather, were carried on in several different states. *Id.* at 309. Nor, the Court observed, had Congress enacted legislation indicating that federally-chartered railroads should be deemed to be citizens of any state. *Id.* at 310. In the absence of either legislation explicitly affording the federally-chartered corporation state citizenship or the limitation of its corporate activities to one state, the Court declined to confer state citizenship on the railroad for diversity jurisdiction purposes.

The Third Circuit analyzed the citizenship of a federally-chartered credit union in the seminal case of *Feuchtwanger Corp. v. Lake Hiawatha Federal Credit Union*. 272 F. 2d 453, 455 (3d Cir. 1959). After observing that the Federal Credit Union Act under which the credit union had been chartered "says nothing about the citizenship of corporations created under it" the Court turned to the analysis articulated in *Bankers' Trust*. *Feuchtwanger*, 272 F. 2d at 455. The *Feuchtwanger* Court highlighted the distinction *Bankers' Trust* had made between federally-chartered corporations "the activities and operations of which were confined to a single state" and those whose activities were not so confined. *Id.* The Court then created an exception to the

general rule that a federally-chartered corporation is not a citizen of any state for diversity purposes. The Court held that a federally-chartered corporation would be deemed a citizen of a given state if its corporate activities and operations were so "localized" that the corporation was essentially a "local institution." *Id.* at 454-55. In support of this rule, the Court invoked the original purpose of diversity jurisdiction—to protect non-local parties from local bias. *Id.* at 455. The Court reasoned that only federally-chartered corporations with heavily localized operations—operations largely confined to a single state—would face such a bias. *Feuchtwanger*'s localization test has been followed by many federal courts in the sixty years since the case was decided. *See, e.g., Iceland Seafood Corp. v. Nat. Consumer Cooperative Bank*, 285 F. Supp. 2d 719 (E.D. Va. 2003), *Little League Baseball v. Welsh Publishing Group, Inc.* 874 F. Supp. 648 (M.D. Pa. 1995), *Burton v. United States Olympic Committee*, 574 F. Supp. 517 (C.D. Cal. 1983).

PenFed urges this Court to either reject or greatly modify the *Feuchtwanger* test based on the Supreme Court's recent decision in *Hertz Corp. v. Friend*. PenFed argues that a federally-chartered credit union should be deemed to be a citizen of the state in which its "principal place of business" is located for diversity purposes. PenFed's Mot. in Support of Removal, ECF No. 33 at 3 (citing *Hertz Corp. v. Friend*, 130 S. Ct. at 1192). Essentially, PenFed asks this Court to adopt the test used to determine the principal place of business of a state-chartered corporation and apply it to a federally-chartered corporation.

In *Hertz Corp. v. Friend*, the Supreme Court resolved a split among the Circuits and held that a state-chartered corporation's "principal place of business," as used in the diversity statute, 28 U.S.C. § 1332, is the "place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 130 S. Ct. at 1192. PenFed argues that *Feuchtwanger*'s

localization test has been undermined by *Hertz* because *Hertz* rejected "[c]omplex jurisdictional tests" that require courts to weigh the amount of business conducted in one state versus another, and the *Feuchtwanger* localization test requires such an analysis.  *Id.* at 1193.  Plaintiffs argue that the Supreme Court never intended the holding in *Hertz* to apply to federally-chartered corporations and urges this Court to apply the traditional "localization" test outlined in *Feuchtwanger*.

Unlike the Supreme Court, this Court does not bear the burden of resolving conflicting Circuit interpretations of a single statute.  Indeed, the test in *Feuchtwanger* has never been seriously questioned, and certainly not in the *Hertz* decision.  *Hertz* did not in any way mention the potential applicability of its holding to federally-chartered corporations or give any indication that the sixty-year old *Feuchtwanger* test should be changed.

While the *Hertz* Court indicated a preference for simple jurisdictional rules, it did so in a context entirely different from the one this Court faces.  At its core, *Hertz* resolved a fundamentally different jurisdictional question than that presented to this Court.  *Hertz* resolved a dispute regarding the proper *interpretation* of a phrase contained in a statute that has long been held to apply only to state-chartered corporations, and it did so to resolve a circuit split.  The Federal Credit Union Act contains no citizenship provision for this Court to interpret.  Were this Court to import the *Hertz* test into the context of determining the citizenship of federally-chartered credit unions, it would be writing a citizenship provision into the Federal Credit Union Act.  Congress has in no way indicated its intent to afford federally-chartered credit unions state citizenship.  If it wishes to do so, Congress—and only Congress—has the authority to expand removal jurisdiction by deeming federally-chartered credit unions to be citizens of the states in which their principal places of business are located.  It simply has not done so.

Applying the *Hertz* nerve center test to the *Feuchtwanger* localization rule would be entirely illogical. The localization test is entirely different and only applies where *single state* localization has been found, thus justifying the equivalent of the status of a state-chartered corporation entitled to protection of the federal courts in order to avoid local bias. A federally-chartered corporation does not get to the "first base" of diversity jurisdiction unless and until it has demonstrated localization establishing it to be effectively the citizen of a state. It would make no sense to apply a nerve center analysis to a non-localized federally-chartered corporation and to use language intended to contract federal jurisdiction and convert it to language expanding jurisdiction.

While the nerve center test adopted in *Hertz* might be a sensible test to apply to federally-chartered credit unions, which over the years have expanded and come to resemble national and international corporations in many ways, it is not for this Court to amend statutes enacted by Congress, even if it would make the treatment of similar corporate entities more consistent. Rather, as the Supreme Court has aptly stated:

> The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941) (internal quotations omitted).

The Supreme Court recently interpreted the citizenship provision of 28 U.S.C. § 1348, which governs the citizenship of federally-chartered national banking associations, in a manner which closely resembles the approach PenFed urges this Court to adopt with respect to federally-chartered credit unions. Section 1348 provides that banking associations "shall, for the purposes

of all other actions by or against them, be deemed citizens of the States in which they are respectively located." In *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), the Supreme Court interpreted "located" as used in the statute and held that a federally-chartered banking association should be deemed a citizen for diversity purposes only of the state in which its "main office," as listed in its articles of incorporation and organization certificate, is located. *Wachovia*, 546 U.S. at 952. The Supreme Court rejected the Fourth Circuit's conclusion that a national bank is "located" in, and therefore a "citizen" of, every State in which it maintains a branch office. *Id.* at 948. PenFed similarly urges this Court to ignore its widespread geographic activities and deem it a citizen of the state containing its main office, the office from which it directs its business operations. Though the parallels to this case are obvious, the *Wachovia Bank* decision dealt only with the proper *interpretation* of a citizenship-granting provision already contained in the statutory scheme under which national banking associations are chartered. *Wachovia Bank* did not write language into a statute to confer state citizenship on a federally-chartered corporation; rather, it interpreted the scope of a citizenship provision Congress had already enacted for a different class of federally-chartered corporation.

It may be that Congress will eventually decide to confer state citizenship status on all forms of federally-chartered corporations. A provision of the Home Owners' Loan Act, 12 U.S.C. § 1464, was recently amended to state that a federal savings association is to be considered a citizen of the state in which the association has its "home office." *See generally Franklin Bank v. Tindall*, 2008 WL 408413, at *1 (E.D. Mich. Feb 12, 2008). If that is Congress' wish, it has the authority to amend the Federal Credit Union Act accordingly, but it has not yet done so. In the absence of congressional action, this Court lacks the power to confer state citizenship on PenFed.

Therefore, the Court turns to an analysis of whether PenFed is "localized" under the *Feuchtwanger* test. It clearly is not. PenFed has branches in Virginia; Washington, D.C.; Maryland; New Jersey; North Carolina; Hawaii; Texas; New York; Puerto Rico; Guam; Turkey; Portugal; and Japan. Even if these branches are not taken into account, PenFed has two service centers, one in Oregon and one in Nebraska, in addition to its Virginia corporate headquarters and nearly 1 million members who reside all around the world and access their accounts worldwide. *Id.* PenFed's executive team is based exclusively in Alexandria, but its management team is based in Alexandria, Virginia; Omaha, Nebraska; and Eugene, Oregon. *Id.*

Sister courts have held that federally-chartered corporations with similarly broad, national operations were not "localized" under *Feuchtwanger*. For example, in *Little League Baseball v. Welsh Publishing Group*, the United States District Court for the Middle District of Pennsylvania held that Little League, a federally-chartered corporation, was not "localized" in Pennsylvania for diversity purposes because it had the power to hire employees, enter into contracts, collect money, and own personalty and realty in states other than Pennsylvania. *Little League*, 874 F. Supp. 648, 654-55 (M.D. Pa. 1995). Even though Little League conducted the majority of its daily operations in Pennsylvania, the Court concluded that Little League could not be deemed a Pennsylvania citizen given the worldwide scope of its overall activities. *Id.* at 655.

Similarly in *Iceland Seafood Corp. v. Nat'l. Consumer Co-op. Bank*, 285 F. Supp. 2d 719 (E.D. Va. 2003), the Eastern District of Virginia held that a federally-chartered bank was not "localized" in Virginia even though its principal place of business was in Virginia. *Id.* at 725-26. The court noted that the bank had made loans to cooperatives in New Jersey, New York, California, Michigan and Pennsylvania in the year prior, and had several branch offices throughout the nation. *Id.*

As *Feuchtwanger* stated, "local bias in favor of local persons and institutions in controversies with strangers, a principal justification for diversity jurisdiction, is more likely to be present in the case of a [federally-chartered] corporation thus localized in fact than one which is connected with the state only in the formal sense of having been incorporated there." *Feuchtwanger*, 272 F. 2d at 455. PenFed is not so localized in Virginia that it will likely face bias before a Maryland court, and this Court is confident that the Circuit Court for Montgomery County can and will provide it a level playing field.

## **CONCLUSION**

PenFed presents a reasoned argument for harmonizing how citizenship is determined for federal credit unions with how it is determined for state-chartered corporations and federal banking associations. Congress has chosen to confer citizenship status on some federally-chartered corporations, but not on federal credit unions. In the absence of congressional action, this Court cannot confer state citizenship on PenFed. PenFed is not the kind of "peculiarly local" federally-chartered corporation that *Feuchtwanger* and its progeny have deemed to be citizens of a given state for diversity purposes, and it is therefore not a citizen of any state. *Feuchtwanger*, 272 F. 2d at 455. Because the Court lacks jurisdiction over this action, it will be remanded to the Circuit Court for Montgomery County by separate order.


January 26, 2011                           _____/s/_____
Date                                                Roger W. Titus
                                                    United States District Judge